And we'll next hear argument in the United States v. Solano. Good morning, Your Honors. May it please the Court, my name is Michael Petryk. I work for the Federal Departments of San Diego, and I represent Mr. Solano on this matter. I think there's two simple reasons that this case should be reversed, aside from the reasons that I outlined in my brief. And the first and foremost is that the district court would not allow Mr. Solano to present a defense in his trial. I think the record reflects that Mr. Solano proffered a defense under Criminal Rule 12.3, and the theory of the defense would be that he thought he had public authority to do what he was doing, moving the aliens through the United States. The difficulty with the argument, it seems to me, is the one that the district court identified, which is that there is a missing link there, which could have been filled without Solano's waiving his Fifth Amendment rights. I think, though, Your Honor, that there's no question based on the record that the district court required Mr. Solano to testify. No, that's just – I don't see that at all. That Solano's proffer could, first of all, easily have been submitted ex parte under seal. It's done all the time, as you know. So that can't be a problem. But the second and perhaps even more important observation is that it could have come from, is it Leighton? Leighton? Leighton. Leighton. It didn't even have to involve Solano. He could have gotten Leighton to say what he told him, but he didn't. Well, Your Honor, that's – that's – I think that's, and I believe that's what the proffer was made to the district court. But it didn't say that. All it did was to – to indicate Leighton's throwaway conclusion, which wouldn't be admissible anyway, that Solano may have misunderstood his authority. He couldn't testify to that. But he could testify, had it been true, that he told Solano that he was authorized by the Border Patrol guy with authority to go for it. I think, Your Honor, the facts that would have come out at trial, based upon the statements that were taken from Mr. Solano at arrest and the statements that were taken from Mr. Leighton by the Border Patrol agents later, were that Mr. Solano was arrested at the checkpoint. He says, I'm acting under authority of the Border Patrol. The agents say, well, show us. Mr. Solano calls Leighton, and Leighton is in contact with the Border Patrol agents. That's the facts that a jury can draw an inference from regarding the defense of public authority. And as you know, he doesn't have to have official authority from a specific Border Patrol agent. He could believe reasonably that he had authority by the Border Patrol to engage in the conduct. That is a jury inference that is not something that a judge could do, I believe, and just preclude the defense, period. But I think the most important thing, though, of course, is that the record specifically says, and the district court specifically said, I need something more. I need to hear from your clients. There's no dispute about that. So what the district court wanted was a proffer by my client to put the public authority of defense forward. I have a different problem with that. It seems that, as I understand the record, what they were actually told was that this operation was dangerous and against the law, and it's hard to understand how any reasonable person could turn that into authorized. That's in the proffer as well, Your Honor. That's right. But, again, the apparent public authority of defense is a reasonable, sincere belief that you have authority, not that you don't. How can you possibly be reasonable? If I tell you that something is dangerous and against the law, how can you possibly reasonably believe that's okay? If I tell my 12-year-old that something is dangerous and against the rules in our household, there's no way that I'm going to let her, you know, at that age tell me, well, I reasonably thought you gave me permission to do it. The message didn't go directly to Mr. Solano, though. It went from Border Patrol through Layton and then through to Solano. And that's where the mistaken belief arose, and that's what we wanted to present at trial. But there's nothing to show what Layton told him. Absolutely nothing. Layton would have testified exactly along the lines of the proffer. But there's no proffer. It's not in the proffer. There is nothing there to show what Layton would have told him. And that's simple. That has nothing to do with the right not to incriminate yourself. Just go get it. I think the question is, Your Honor, Layton would have testified to one of two things. Either I told him exactly what the Border Patrol said to me, or I told him something different. In any case, none of those facts went to the jury. And the point of this is that the district court should have let those facts go to the jury. You cannot preclude a defense. Well, then put differently, if those facts in the proffer had gone to the jury, I can't see any way that an instruction on the defense would have been supportable, because there is no way, as Judge Graber just said, that one could find reasonably a reasonable, objective belief of authority. I think under the case law, he just has to have a reasonable, sincere belief. It doesn't have to be an objective belief. It's based on what the person believes, a reasonable, sincere belief, not objective. What is reasonable if it's not the objective component? Sincere is the subjective component. Reasonable under the circumstances, I think, is how. Well, that's still objective, isn't it? The sincere part is the subjective part. Isn't the reasonable part some objective look at whether a thinking person would have analyzed the issue that way? I think the analysis that the jury would have to undertake is, is it reasonable for this person under the circumstances to believe this? And I think under the circumstances, given the way the evidence would have come out according to the proffer, that he was in contact with his producer, who was in contact with the Border Patrol, and he thought he had authority to do this. I think that given the circumstances, the jury could think that Mr. Solano had a reasonable belief under the circumstances that he was acting with public authority. I don't think it's an objective standard like a Fourth Amendment objective standard or a Fifth Amendment, you know, objective standard. I think it's more, it's tied into the defendant's state of mind, and that's exactly what the public authority defense is all about. The other reason that I think this case requires reversal is the 404B issue, plain and simple. Vega is dead on in this case, and the government's proffer that this evidence is inextricably intertwined, or their argument that that is the case. You mean Gutierrez, the telephone call to Gutierrez? Is that what you're talking about? Yes, to Mr. Gutierrez, right. Yeah. There is absolutely no way that that telephone call is part of this offense. There is nothing, according to Vizcarra-Martinez, and in the Williams case that Vizcarra-Martinez discusses, for instance, to be part of the offense is a person who is selling two different types of drugs at the same time. There's no link between that telephone call. You mean there's no link between a call that's made right before you then go to Arizona and bring some couple of people that you've just asked help for? Well, Vizcarra-Martinez says specifically that contemporaneousness is not enough to get them past the 404B burden. And that was government's argument in the trial court, and that is government's argument on appeal. So I don't think that there's any way that that is contemporaneous enough as part of the same transaction. And, of course, the other reason under the inextricably intertwined exception is the coherence story. And there's absolutely no argument I think that the government can make that Mr. Gutierrez's testimony adds anything to the case. They could have tried the case starting with the infrared view, the trucker's testimony, through Agent Luna's interrogation of Mr. Solano, and that would be the end of it. Mr. Gutierrez is purely a witness that they sandbagged and that they should have given notice under 404B. And I think those are the two main reasons this court should reverse. If there's no other questions regarding the remaining issues, I would submit them and reserve my time for rebuttal. Mr. Haines. Roger Haines, representing the United States in this case, Your Honor. Sometimes it's a joy to hear an oral argument and hear the judges ask the questions of your opposing counsel. And this court has just done that for me. I appreciate the questions. I think you're right on. I would only say with regard to the issue of the public authority defense that the court should bear in mind that the investigation that Fox News was doing in this case was of Muslim aliens in a stash house in Yuma, Arizona. And the crime the defendant committed was transporting Mexican aliens to North through a checkpoint. And not only delivering them to the Border Patrol or admitting at the time that I'm doing your bidding when he was asked, did you just let people off before the checkpoint? He didn't do that. He let them off before the checkpoint and then denied that he was transporting the aliens at all. So there's really no basis at all from which a reasonable jury could find that this defendant was acting on behalf of the Border Patrol authorized to transport these aliens. Turning to the second issue, if there are no further questions on that issue. With regard to the call to Mr. Gutierrez, that call occurred just a few hours before the aliens that Mr. Solano was transporting crossed into the United States, called him, and he went down and picked them up. So essentially what we have is him soliciting the exact same crime that he committed a few hours later to a different person, admittedly. But nevertheless, it was the same crime. If he had a room full of people and solicited each of them, do any of you know somebody who could bring somebody across the border? I don't think this court would have any doubt in saying that that was the same crime inextricably intertwined. Here he was inquiring about crossing some relatives. Is that not correct? It is correct. And I believe that one of these aliens was a distant relative of his. Although I'm not sure that's in the record. It's in the various papers. I certainly didn't see that. It's in the various papers. I'm not sure it's in the record. I didn't see it in the record. It certainly wasn't necessary to the story that was presented, was it? The call to Gutierrez? Yes. Well, I think it's necessary. I think we would have convicted him without it. I think so, too, maybe. There was abundant evidence. But nevertheless, it does show that he knew they were aliens. This was part of the crime. He had to get people across the border before he could transport them north. And this was the kind of thing one does. And it's certainly inferrable that even though Gutierrez said, no, I don't know anybody, that within hours this defendant contacted somebody else who did know somebody who could bring his friends across the border who then called him. So it certainly is very bound up with, inextricably intertwined, if you will, with this crime. It is, in a sense, less and more than another crossing on another load of drugs, for instance. This is different, better for us, I think. It wasn't the actual drugs coming across. But it was the same kind of thing as another load of drugs within a few hours of this load of drugs. It was a solicitation of somebody not to bring another load, but to bring this load across the border. Didn't work out with that defendant, but he then obviously solicited somebody else to bring across these people. Is there no further questions? All right. Thank you, Mr. Haynes. Mr. Pefferd? I think the only thing I have to add, just to make comments, is that there was absolutely no evidence that either one of the aliens was related to Mr. Solano. And, in fact, I think that the testimony by material witness Acevedo in the case that he knew him personally from Long Beach, there was no evidence in the record, to my knowledge, that they're related. And, therefore, I think that any argument that they have that he's smuggling his relatives into, and that's why this phone call is relevant to the proceedings, I think is suspicious. Okay. Thank you both for your argument. The matter just argued will be submitted. The Court will stand in recess for the day.
judges: B. Fletcher, Rymer, Graber